---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

|  Melissa H. Kunig  |  N/A  |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**PROCEEDINGS: ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE TRANSCRIPTS OF THE EXPERT DEPOSITIONS [33], [52]**

Before the court are two motions: (1) Defendant County of Los Angeles's ("Defendant") Motion for Summary Judgment ("Motion" or "Mot."), (Dkt. 33); and (2) Plaintiff Gary Agosto's ("Plaintiff") Motion for Leave to File Transcripts of Expert Depositions ("Motion for Leave"), (Dkt. 52).[1]

---

[1] In the Motion for Leave, Plaintiff seeks leave to submit additional deposition transcripts for the court's consideration in deciding the Motion for Summary Judgment. (Dkt. 52.) Plaintiff requests that the court consider testimony from expert depositions that took place on May 16, 2023, and May 17, 2023, because the testimony creates a question of fact regarding Defendant's negligence. (Notice of Motion at 2.) Defendant opposes the Motion for Leave on the grounds that it is untimely and improperly seeks to reopen briefing on the Motion for Summary Judgment. (Dkt. 53.) The court agrees with Defendant that Plaintiff's request is untimely and effectively serves as a surreply. *See, e.g., Great Am. Ins. Co. v. Berl*, 2017 WL 8180627, at *1 (C.D. Cal. Oct. 23, 2017) ("[C]ourts should allow a sur-reply only when a valid reason for additional briefing exists, such as when the reply brief raises new arguments that require some additional response, or the sur-reply appears to clarify many of the movant's positions.") (internal quotation marks omitted). In this case, the court observes the additional depositions took place after the Motion for Summary Judgment was argued and taken under submission on

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

In the Motion, Defendant argues it is entitled to summary judgment on both claims asserted by Plaintiff Gary Agosto's ("Plaintiff") because there is no genuine issue of material fact, Plaintiff's negligence claim fails as a matter of law, and Plaintiff's claim under 42 U.S.C. Section 1983 fails for lack of evidence. (*See generally* Mot.) Plaintiff is the father of the decedent, two-year-old J.L.A., who died while in the custody of her mother, Lacey Anna Mazzarella. (Dkt. 1-1 (Second Amended Complaint) ¶¶ 7-8.)

The Motion is supported by the declarations of Michelle Bejosano-Fidello, a social worker employed by the California Department of Children and Family Services ("DCFS") ("Fidello Decl."); Maple Lee, a DCFS social worker ("Lee Decl."); Hoan Nguyen, a DCFS supervising social worker ("Nguyen Decl."); Kimberly Morosi, Defendant's counsel ("Morosi Decl."), and exhibits attached thereto. (Dkts. 33-3—12.) Defendant also filed a Statement of Uncontroverted Facts and Conclusions of Law. (Dkt. 33-1.) On April 14, 2023, Plaintiff opposed the Motion ("Opposition" or "Opp."). (Dkt. 42.) Plaintiff's Opposition is supported by the declaration of Plaintiff's counsel Nathalie Vallejos ("Vallejos Decl.") and exhibits attached thereto. (*Id.*)[2] Plaintiff also filed a Separate Statement of Uncontroverted Facts and Genuine Disputes and Conclusions of Law. (Dkt. 42-1.) On April 20, 2023, Defendant filed a Reply ("Reply") and Evidentiary Objections to Plaintiff's Opposition. (Dkts. 45, 46.)

The court previously granted the parties' applications to file various exhibits under seal. (Dkts. 31, 32, 34, 35, 43, 44, 50.) On May 11, 2023, the court held a hearing on the matter and then took the matter under submission. (Dkt. 48.) Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED**. Therefore, summary judgment is granted in

_____

May 11, 2023. (Dkts. 48, 60.) The court concludes Plaintiff has not sufficiently demonstrated why briefing on the Motion for Summary Judgment should be re-opened and the court thus **DENIES** Plaintiff's Motion for Leave.

[2] Plaintiff filed two Oppositions, one at Docket No. 41 and another at Docket No. 42. (*See generally* Dkt.) During oral argument on the Motion on May 11, 2023, Plaintiff indicated that the Opposition filed at Docket No. 42 was the operative document. (Dkt. 48.) Accordingly, any references to the Opposition in this Order refer to the filing at Docket No. 42.

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                              Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

favor of Defendant on Plaintiff's claims for negligence and unconstitutional policy, practice, or custom under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

## I.    Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence.").  In the context of a summary judgment, a district court "must also rule on evidentiary objections that are material to its ruling."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).  "A court can award summary judgment only when there is no genuine dispute of material fact.  It cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *accord Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).  Additionally, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence."  *Burch*, 433 F. Supp. 2d at 1120; *see Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

"'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion, are all duplicative of the summary judgment standard itself' and unnecessary to consider here."  *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (quoting *Burch*, 433 F. Supp. 2d at 1119) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Sandoval*, 985 F.3d at 665.  "Similarly, the [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented."  *Holt*, 370 F. Supp. 3d at 1164 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008)).  "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

because there is no jury that can be misled and no danger of confusing the issues." *Id*. (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013)).

"At the summary judgment stage," the court "do[es] not focus on the admissibility of the evidence's form" but "instead focus[es] on the admissibility of its contents." *Fraser*, 342 F.3d at 1036 (citations omitted). Accordingly, except in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format at trial, the court does not consider any objections on the grounds that the evidence "constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge." *Holt*, 379 F. Supp. 3d at 1164 (citing *Burch*, 433 F. Supp. 2d at 1122); *see also Sandoval*, 985 F.3d at 665-67; *id*. at 667 (objections for foundation "provide[] no basis for excluding the evidence" where objecting party does not provide counterparty with "notice of the specific ground of objection and, consequently, what could be done to cure any defects"). Relatedly, objections based on a failure to comply with the technicalities of authentication requirements or the best evidence rule are inappropriate. *See Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011) ("On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial."); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding that court was not precluded from considering declaration in awarding summary judgment even if declaration violated best evidence rule if the underlying facts would be admissible as evidence).

#### a. Plaintiff's Objections

Plaintiff objects to Defendant's Statement of Undisputed Facts ("SUF") Nos. 36, 73-76, 80, 87, and 96 on the grounds that these facts are disputed. (Dkt. 42-1.) Plaintiff further notes that certain facts are "neither disputed or undisputed" because Plaintiff was "not allowed to depose Lee, Fidello, or Nguyen." (*See, e.g.*, D. SUF Nos. 2, 3, 6, 7, 12-18, 81-85, 91-93, 98, 101-106.) The court finds objections based on whether a fact is "disputed" are redundant of the summary judgment standard and are not cognizable evidentiary objections. *See Holt*, 370 F. Supp. 3d at 1164 ("[T]he Court will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented."). The court further finds that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

whether a party was permitted to take discovery similarly does not assert a cognizable evidentiary objection.  The court **OVERRULES** Plaintiff's objections.

> **b. Defendant's Objections**

Defendant objects to Plaintiff's SUF Nos. 107-110, 112-124, 126-132, 135, 137, 138, 142, 144, 148, 149, 151-153, 155-160, and 162-168 on the grounds that the facts lack foundation, rely on unauthenticated documents, are inadmissible hearsay, irrelevant, conclusory or speculative, or unsupported by evidence.  (Dkt. 45.)  The court finds Defendant's objections are duplicative of the summary judgment standard or insufficient to demonstrate Plaintiff's evidence could not be produced in an admissible form at trial.  Thus, the court **OVERRULES** Defendant's objections.  *See Holt*, 379 F. Supp. 3d at 1164; *Sandoval*, 985 F.3d at 665-67; *Adams*, 828 F. Supp. 2d at 1008 n.5.

## II.    Summary of Undisputed Facts

At approximately 11:44 p.m. on July 17, 2019, the Department of Children and Family Services ("DCFS") hotline received a referral regarding J.L.A. after her mother, Lacey Mazzarella, was cited for driving under the influence ("DUI").  (D. SUF No. 1.)  When the DCFS hotline receives a referral where there is reason to believe a child is at imminent risk of harm indicating an urgent response is needed outside of business hours, the referral is sent to DCFS Emergency Response Command Post ("ERCP").  (D. SUF No. 2.)  The ERCP has a team of social workers who are available 24 hours to referrals that require immediate response outside of business hours.  (D. SUF No. 3.)  The referral received for J.L.A. indicated that J.L.A. was in a safe environment until at least July 18, 2019.  (D. SUF No. 4.)  The referral was classified as one that required immediate response within 24 hours.  (D. SUF No. 5.)

On July 18, 2019, the referral was sent to DCFS social worker, Michelle Bejosano-Fidello, who was the assigned duty social worker that day for the Torrance office, to investigate.  (D. SUF No. 6.)  Social worker Maple Lee was assigned to assist Fidello with the investigation.  (D. SUF No. 7.)  The referral indicated J.L.A. was with her father, Gary Agosto, so Fidello and Lee initiated their investigation by conducting an unannounced visit to his home.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

(D. SUF No. 8.)  On July 18, 2019, the social workers met with Agosto and J.L.A., who they observed to be happy, healthy, clean, and well-cared for.  (D. SUF No. 9.)  Agosto and Mazzarella did not have a formal schedule regarding who had physical custody of J.L.A.  (D. SUF No. 10.)  Agosto reported that J.L.A. had been medically cleared by EMTs after Mazzarella's DUI incident.  (D. SUF No. 11.)  DCFS uses a system called Child Welfare Services/Case Management System ("CWS/CMS"), which is a statewide database that shows prior social service contacts with individuals.  (D. SUF No. 12.)  When the DCFS hotline receives information from a referral, the information is uploaded into CWS/CMS within 24 hours.  (D. SUF No. 13.)

Sometime after the home visit with Agosto, Fidello checked CWS/CMS to determine whether Agosto, Mazzarella, or J.L.A. had any prior DCFS involvement.  (D. SUF No. 14.)  CWS/CMS showed that Agosto, Mazzarella, and J.L.A. did not have any prior DCFS history or prior history with any child welfare agency within California.  (D. SUF No. 15.)  DCFS requires social workers to gather as much information related to a case as possible during their investigations and to notate this information in CWS/CMS.  (D. SUF No. 16.)  Social workers must input their notes from all communications, visits, and observations within three business days of the event wherein the information was obtained.  (D. SUF No. 17.)  At all times relevant to their investigation of J.L.A.'s case, Lee and Fidello followed this procedure and inputted their notes within the required timeframe.  (D. SUF No. 18.)

On July 19, 2019, Fidello called Mazzarella, who explained that she had been drinking the night before she was arrested for the DUI and that J.L.A. was not in her custody at the time she had been drinking.  (D. SUF No. 19.)  Mazzarella further explained that she was surprised that she still had alcohol in her system at the time of the DUI because it had been over 24 hours since she drank.  (D. SUF No. 20.)  Mazzarella reported to Fidello that she just started a new job as a chef and had a very busy schedule with long hours.  (D. SUF No. 21.)  Mazzarella informed Fidello that she would be in contact regarding her schedule and wanted to speak with her landlords before the social workers conducted a home visit.  (D. SUF No. 22.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

On July 30, 2019, Lee attempted to call Mazzarella, but J.L.A.'s babysitter, Illie, picked up the call instead. (D. SUF No. 23.) Illie reported to Lee that she had no concerns about Mazzarella's ability to parent and care for J.L.A. (D. SUF No. 24.) Lee inquired about whether Mazzarella and Agosto had any substance abuse and/or alcohol issues, and Illie reported that she did not believe they did, that she had no concerns of potential neglect by either parent, and that she had no concerns regarding Mazzarella's ability to parent. (D. SUF No. 25.) On July 30, 2019, Fidello called the Los Angeles Sheriff's Department ("LASD") to confirm whether any criminal charges were filed against Mazzarella related to the DUI incident. (D. SUF No. 26.) A LASD detective informed Fidello that he would call her back to confirm whether any criminal charges were filed against Mazzarella. (D. SUF No. 27.)

On July 30, 2019, Fidello called J.L.A.'s daycare provider, Shiny's Daycare, regarding J.L.A. and spoke with Shahina Naser. (D. SUF No. 28.) Naser confirmed that J.L.A. had been attending Shiny's Daycare for eight months for three days per week. (D. SUF No. 29.) Naser reported to Fidello that she did not have any concerns about Mazzarella, Agosto, or J.L.A. (D. SUF No. 30.) Naser reported to Fidello that she did not have any concerns about J.L.A., who went to daycare clean and happy. (D. SUF No. 31.) On July 30, 2019, Fidello contacted a County public health nurse, Cynthia Conner-Anderson, to have her review medical records pertaining to J.L.A. (D. SUF No. 32.) Nurse Conner-Anderson reviewed records of J.L.A.'s most recent physical exam, which was conducted on May 8, 2019, which showed that J.L.A. had no medical issues or concerns. (D. SUF No. 33.)

On July 30, 2019, Lee visited Agosto's residence attempting to meet with him but was informed that he was not home. (D. SUF No. 34.) That same day (July 30, 2019), Lee called Agosto requesting to conduct a home visit. (D. SUF No. 35.) The parties dispute whether Agosto did not want DCFS to come to his home. On the night of July 31, 2019, Lee received a text message from Mazzarella. (D. SUF No. 37.) Lee replied asking Mazzarella if she was available for a home visit but did not receive a response. (D. SUF No. 38.)

On August 1, 2019, Lee conducted an unannounced visit to Mazzarella's residence. (D. SUF No. 39.) Mazarella was not home, but Lee met with Mazzarella's landlord, Mujeeb Babar,

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

and asked questions regarding Mazzarella and J.L.A. (D. SUF No. 40.) Babar reported to Lee that Mazzarella was very loving with J.L.A. and that he did not have any concerns about her parenting. (D. SUF No. 41.) Lee provided Babar with her business card to give to Mazzarella. (D. SUF No. 42.) Mazzarella's landlords told her that a social worker had come by the house and asked about her and J.L.A. (D. SUF No. 43.)

On August 2, 2019, Mazzarella messaged Lee indicating she was available to meet the following Friday. (D. SUF No. 44.) On August 5, 2019, Lee sent a follow up message to Mazzarella regarding her availability to meet. (D. SUF No. 45.) On August 6, 2019, Agosto messaged Lee alleging that Mazzarella was withholding J.L.A. was from him on days that he was supposed to have custody of her. (D. SUF No. 46.) Agosto never called police regarding J.L.A. or Mazzarella withholding J.L.A. (D. SUF No. 47.) In response to Agosto's text message, that same day (August 6, 2019), Lee called Illie regarding J.L.A.'s whereabouts. (D. SUF No. 48.) Lee also attempted to call Mazzarella multiple times to follow up on Agosto's allegations that she was withholding J.L.A. but was unable to reach her. (D. SUF No. 49.)

On August 8, 2019, Lee called the LASD to follow up on whether criminal charges were filed against Mazzarella for the DUI incident but was not able to confirm whether charges had been filed. (D. SUF No. 50.) On August 12, 2019, Lee conducted a visit to Agosto's home. (D. SUF No. 51.) During the visit, Agosto informed Lee that Mazzarella had a history of substance abuse. (D. SUF No. 52.) On August 13, 2019, Lee messaged Illie about scheduling a visit to see J.L.A. in person. (D. SUF No. 53.) That same day (August 13, 2019), Lee attempted to reach Mazzarella and left a voicemail. (D. SUF No. 54.) Fidello and Lee met with Supervising Social Worker Hoan Nguyen and Assistant Regional Administrator Rosa Tang to discuss the case and noted there were no clear signs that J.L.A. was abused and/or neglected. (D. SUF No. 55.)

On August 14, 2019, Lee called Illie and asked her to notify her if J.L.A. was in her care so that DCFS could conduct another in-person visit with J.L.A. (D. SUF No. 56.) At approximately 6:10 a.m. on August 15, 2019, Lee conducted an unannounced visit to Mazzarella's home. (D. SUF No. 57.) Lee stayed for approximately 30 minutes and rang the

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                                Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

doorbell and knocked on the door multiple times but did not receive any response.  (D. SUF No. 58.)  After receiving no response, Lee contacted Mazzarella's workplace.  (D. SUF No. 59.)  A co-worker informed Mazzarella that she had missed a social worker's call.  (D. SUF No. 60.)  Mazzarella called Lee back and reported that she had been at work since 6:00 a.m. that morning.  (D. SUF No. 61.)  Mazzarella informed Lee that her cell phone had been broken.  (D. SUF No. 62.)  Lee offered to meet Mazzarella at work, but Mazzarella informed her that the DCFS office was on her way home.  (D. SUF No. 63.)

On August 15, 2019, Lee met with Mazzarella and J.L.A. in the DCFS office parking lot. (D. SUF No. 64.)  Lee noted that Mazzarella was dressed in her work uniform, which was stained with food.  (D. SUF No. 65.)  Mazzarella testified that she had been drinking alcohol prior to her meeting with Lee.  (D. SUF No. 66.)  Mazzarella testified that Lee asked if she smelled alcohol on Mazzarella.  (D. SUF No. 67.)  Mazzarella testified that she lied to Lee and told her that the smell was due to soy sauce on her chef's coat, which she wore during the meeting.  (D. SUF No. 68.)

Lee asked Mazzarella about the allegations of her alcoholism.  (D. SUF No. 69.)  Mazzarella admitted to Lee that she had been to drug rehabilitation and that she was sober for over a year and a half.  (D. SUF No. 70.)  Mazzarella reported to Lee that she drank alcohol occasionally.  (D. SUF No. 71.)  Mazzarella testified that she lied to Lee about her alcoholism. (D. SUF No. 72.)  At some point prior to 2019, Mazzarrella had given up her parental rights to a different child she had when she lived in Connecticut.  (D. SUF No. 75.)  The parties dispute the extent to which DCFS inquired into or knew about the existence of other children who had previously been removed from Mazzarella's custody.

During the August 15, 2019, meeting with J.L.A. and Mazzarella, Lee observed J.L.A. during the visit and noted that she was active and appeared to be happy.  (D. SUF No. 77.)  During the August 15, 2019, meeting with J.L.A. and Mazzarella, Lee conducted a body check of J.L.A. for any signs of physical abuse and/or neglect.  (D. SUF No. 78.)  During the August 15, 2019, meeting with J.L.A. and Mazzarella, Lee attempted to interview J.L.A., but due to her age, J.L.A. did not provide any meaningful response to her questions.  (D. SUF No. 79.)  The

_____

**CIVIL MINUTES – GENERAL**                                                              **9**

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                           Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

parties dispute whether Lee observed any signs of abuse, neglect, or risk of harm during the
visit.

During the August 15, 2019, meeting Lee observed J.L.A. was wearing a dress with no
underwear and had two small dime sized scrapes on her left knee area and bruising on her
forehead. (P. SUF No. 146.) Lee also saw J.L.A. nearly get hit by the open car door because
she was struggling to get out of Mazzarella's grasp. (P. SUF No. 147.) The meeting lasted
about ten minutes. (P. SUF No. 158.) Plaintiff testified that he told DCFS at least ten times
that Mazzarella had previously lost custody of another child. (P. SUF No. 125.) Plaintiff
testified that he specifically told Lee in August 2019 that Mazzarella had previously had a child
taken from her and had a history of using drugs. (P. SUF No. 136.)

Ultimately, Lee did not form the opinion during the August 15, 2019, meeting that
Mazzarella was under the influence of drugs or alcohol. (D. SUF No. 81.) Nor did Lee form
the opinion that Mazzarella was being untruthful about the information she provided during the
August 15, 2019, meeting. (D. SUF No. 82.)

During the investigation, the social workers believed the difficulty they had in arranging
a visit with Mazzarella was due to her busy schedule. (D. SUF No. 83.) Mazzarella did not try
to avoid contact with DCFS social workers and the social workers did not form the opinion that
Mazzarella was being avoidant during their investigation. (D. SUF No. 84.) Based on the
information provided to social workers by all the collateral contacts they made, they formed the
opinion that Mazzarella was more involved in J.L.A.'s care than Agosto. (D. SUF No. 85.)
Mazzarella provided social workers with results from a drug test she had taken shortly before
the August 15, 2019, meeting which showed negative results for all drugs. (D. SUF No. 86.)

On August 19, 2019, Nguyen conducted a search of Agosto and Mazzarella's criminal
history in their database, which showed no arrests and/or convictions. (D. SUF No. 87.) The
parties dispute the scope of this search, such as whether it was limited to California criminal
records. On August 19, 2019, Nguyen contacted Exer Urgent Care regarding Mazzarella's drug
test results to clarify why Mazzarella had to undergo drug testing. (D. SUF No. 88.) A staff

_____
**CIVIL MINUTES – GENERAL**                                                              **10**

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

member at Exer Urgent Care informed Nguyen that Mazzarella was required to submit to drug
testing for her employment.  (D. SUF No. 89.)  Agosto never filed for a restraining order to
keep Mazzarella from having contact with J.L.A.  (D. SUF No. 90.)

    Based on the information provided to social workers and gathered from their
investigation, the social workers formed the opinion that J.L.A. was not at any risk of imminent
harm that would justify removing her from Mazzarella.  (D. SUF No. 91.)  Based on the
information gathered during their investigation, Lee and Fidello did not form the opinion or
receive any information to suggest that Mazzarella had any active drug or alcohol issues that
presented a risk of harm to J.L.A.  (D. SUF No. 92.)  The social workers formed the opinion
that J.L.A. did not need to be removed from Agosto or Mazzarella's custody based on the
following: Mazzarella did not appear to have issues keeping a job, was able to make
arrangements for J.L.A.'s care, had no criminal history reflected in the system indicating she
had dependency issues, and none of the collateral contacts expressed that she had drug and
alcohol issues.  (D. SUF No. 93.)  The social workers closed their investigation regarding J.L.A.
on August 19, 2019.  (D. SUF No. 94.)  There were no prior referrals regarding J.L.A. to DCFS.
(D. SUF No. 95.)  Prior to July 2019, Mazzarella never had any previous contact with DCFS.
(D. SUF No. 96.)  Agosto never called a child abuse hotline to report any concerns regarding
J.L.A.'s safety while being in Mazzarella's custody.  (D. SUF No. 97.)  After the July 2019,
referral, there were no subsequent referrals to DCFS concerning J.L.A.'s welfare until her
death.  (D. SUF No. 98.)

    On September 23, 2019, J.L.A. died after Mazzarella left her in a heated vehicle
overnight.  (D. SUF No. 99.)  Mazzarella was subsequently convicted of Child Endangerment
(violation of California Penal Code section 273(a)), Voluntary Manslaughter (violation of
California Penal Code section 192(a)), and Mayhem (violation of California Penal Code section
203), and is serving a sentence of 14 years and 8 months for that conviction.  (D. SUF No. 100.)

    When social workers are hired by DCFS, they are required to undergo a three to four-
month training on various topics, including emergency response, before they report to their
assigned office.  (D. SUF No. 101.)  After reporting to their assigned office, social workers

**CIVIL MINUTES – GENERAL**                                            **11**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

must undergo field training for an additional three months by shadowing more senior social workers in the field. (D. SUF No. 102.) DCFS social workers are required to a minimum of 20 hours of continuing education training per fiscal year. (D. SUF No. 103.) At the time they were involved in J.L.A.'s investigation, Lee, Fidello, and Nguyen had satisfied all their training requirements. (D. SUF No. 104.) At the time they were involved in J.L.A.'s investigation, Lee, Fidello, and Nguyen were trained in emergency response. (D. SUF No. 105.) At the time they were involved in J.L.A.'s investigation, Lee, Fidello, and Nguyen were assigned to the Emergency Response Team for DCFS's Torrance office. (D. SUF No. 106.)

## III.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

party must go beyond the pleadings and by its own evidence 'set forth specific facts showing
that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th
Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must
show specific trial-worthy facts."). "Where the record taken as a whole could not lead a
rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat.
Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the
summary judgment stage, the court does not make credibility determinations or weigh
conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).
The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle
Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v.
Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists"
does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is,
if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard
provides that the mere existence of some alleged factual dispute between the parties will not
defeat an otherwise properly supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A.
Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a
genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary
judgment process:

The moving party initially bears the burden of proving the absence of a genuine issue
of material fact. Where the non-moving party bears the burden of proof at trial, the
moving party need only prove that there is an absence of evidence to support the

**CIVIL MINUTES – GENERAL                                                    13**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

non-moving party's case.  Where the moving party meets that burden, the burden
then shifts to the non-moving party to designate specific facts demonstrating the
existence of genuine issues for trial.  This burden is not a light one.  The non-moving
party must show more than the mere existence of a scintilla of evidence.  The non-
moving party must do more than show there is some "metaphysical doubt" as to the
material facts at issue.  In fact, the non-moving party must come forth with evidence
from which a jury could reasonably render a verdict in the non-moving party's favor.
In determining whether a jury could reasonably render a verdict in the non-moving
party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

    "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against
a party who fails to make a showing sufficient to establish the existence of an element essential
to that party's case, and on which that party will bear the burden of proof at trial."  *Lujan v.
Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).  "Where no such showing is
made, the moving party is entitled to a judgment as a matter of law because the nonmoving
party has failed to make a sufficient showing on an essential element of her case with respect to
which she has the burden of proof."  *Id.* (cleaned up).

## IV.    Discussion

    Plaintiff asserts two claims against Defendant: (1) negligence; and (2) unconstitutional
policy, practice, or custom under *Monell*.  (*See generally* SAC.)  Plaintiff also argues the
Motion is premature because Plaintiff has not been able to depose Defendant's witnesses.
(Opp. at 1-3.)

### a.  The Motion Is Not Premature Under Federal Rule of Civil Procedure 56(d)

    The court first considers Plaintiff's argument that the Motion is premature because
Plaintiff has not been able to depose the social workers assigned to J.L.A's case.  (Opp. at 1-3.)

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

The court construes Plaintiff's request to stay the Motion as one under Federal Rule of Civil Procedure 56(d).

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.* "Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment." *Program Engineering, Inc. v. Triangle Publ'ns, Inc*, 634 F.2d 1188, 1193 (9th Cir. 1986).

In this case, the court previously denied Plaintiff's *ex parte* application to compel the depositions of social workers Lee, Fidello, Nguyen, and Tang on the grounds that Plaintiff had not met the requirements for *ex parte* relief or demonstrated good cause to modify the Scheduling Order under Federal Rule of Civil Procedure 16(b). (*See* Dkt. 40.) In that Order, the court noted that, per the record before the court, two of the social workers were listed in Plaintiff's own initial disclosures made on December 17, 2021, and the remaining two social workers were listed in Defendant's initial disclosures made the same day. (*Id.*) The court further noted the record indicated Plaintiff had received the information necessary to identify all four individuals as early as December 17, 2021, but did not serve any discovery or notice the depositions of the four social workers until over one year and three months later, on March 3, 2023. (*Id.*) By that time, the social workers were not available for deposition until May 2023. (*Id.*) The parties were not able to agree on alternative dates that would permit the depositions to be completed before the discovery cutoff. (*Id.*) On March 27, 2023, the parties filed a Stipulation to continue all discovery and trial dates by approximately three months. (Dkt. 29.) On March 28, 2023, the court denied the Stipulation because, in part, the Stipulation did not demonstrate the parties' diligence in completing depositions. (Dkt. 30.) On April 7, 2023—one day *after* the discovery cutoff—Plaintiff filed an *ex parte* application before the Magistrate Judge seeking to compel depositions. (Dkt. 36.) On April 10, 2023, the Magistrate Judge

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                         Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

denied the *ex parte* application but noted that Plaintiff could seek relief from the District Judge. (Dkt. 37.)

In summary, the court concludes deferring the Motion to permit Plaintiff to take the depositions of social workers Lee, Fidello, Nguyen, and Tang is not warranted under Rule 56(d). At this juncture, the discovery cutoff has passed, the Motion is fully briefed and argued, and the court has already denied Plaintiff's *ex parte* application to compel such depositions. (*See* Dkts. 40, 48, 60.) In other words, Plaintiff has not sufficiently demonstrated that he "had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case" such that additional discovery should be permitted before the court rules on the Motion. *Program Engineering*, 634 F.2d at 1193. Accordingly, the court considers the merits of the Motion.

### b. Claim One (Negligence)

Plaintiff's first claim for negligence asserts two theories: (1) breach of mandatory duty; and (2) negligent retention and supervision. (*See generally* Opp.) The court addresses each theory in turn.

To sustain claims for negligence under California law, "plaintiffs must show that [defendants] owed them a legal duty, that [defendants] breached that duty, and that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001) (citations omitted); *see also Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (2018) ("The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages.").

### i. Breach of Mandatory Duty

Under California Government Code Section 815.2(a), a public entity is liable for injuries "proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." *Id.* However, "a public

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov. Code § 815.2(b).

Section 820.2 of the Government Code states that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *Id.* However, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov. Code. § 815.6. In summary, "liability of public officials and entities hinges on the characterization of their duties as mandatory or involving the exercise of discretion." *R.H. v. Cnty. of San Bernardino*, 2020 WL 5775177, at *4 (C.D. Cal. July 31, 2020) (internal quotation marks omitted).

Under Government Code Section 815.6, a public entity may only be liable when: "(1) a mandatory duty is imposed by an enactment; (2) the duty was designed to protect against the kind of injury allegedly suffered; and (3) breach of the duty proximately caused injury." *State Department of State Hospitals v. Superior Court*, 61 Cal. 4th 339, 348 (2015); Cal. Gov't Code § 815.6.

In this case, Plaintiff cites to numerous alleged breaches of mandatory duties in the SAC. (*See generally* SAC.) However, in Opposition, Plaintiff argues the social workers failed to comply with three specific mandatory duties: (1) social worker Lee failed to comply with her mandatory duty to report suspect child abuse under California Penal Code Sections 11166, 11165.7(a)(15), (18), and (21) when Lee did not report Mazzarella's possible intoxication during their interview on August 15, 2019; (2) social workers Lee and Fidello failed to complete a "Structured Decision Making Tool" evaluating the safety and risk factors for J.L.A. as required by DCFS Policy Nos. 70-548.10 and 70-548.24; and (3) social workers had a mandatory duty to supervise or otherwise control Mazzarella. (Opp. at 8-18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

Defendant argues there was no breach of any mandatory duty for the following reasons:
(1) a social worker acting in an investigatory capacity has no duty to report suspected child
abuse and in this case, there is no evidence that Lee believed Mazzarella had been drinking
before their interview on August 15, 2019; and (2) completing a Structured Decision Making
Tool is an internal policy and procedure rather than a mandatory duty.  (Reply at 3-7.)

> 1. <u>The Undisputed Facts Demonstrate Social Worker Lee Was
>    Investigating a Prior Report of Suspected Child Abuse and Did Not
>    Learn of New Facts Requiring a New Report</u>

First, as to whether social worker Lee failed to comply with a mandatory duty to report
suspected child abuse, the court concludes the undisputed facts demonstrate Lee was acting as a
follow-up investigator during her interview of Mazzarella on August 15, 2019, and moreover,
did not learn of new facts that would require her to generate a new report of child abuse.  In
*R.H. v. Cnty. of San Bernardino,* 2020 WL 5775177, at *7 (C.D. Cal. July 31, 2020), the court
reviewed California law and distinguished between the duties of a mandatory reporter who
receives an initial report of abuse and that of an investigator who follows up on an already-
reported instance of abuse:

> [I]n the context of a mandatory reporter who is also an employee of a child protective
> agency. . . it is crucial to know what "hat" the employee is wearing when performing
> the duties in question—that of mandatory reporter or that of follow-up
> investigator—to determine whether the employee is subject to Section 11166(a).  If
> the employee is wearing the hat of mandatory reporter, pursuant to Section 11166(a),
> the employee has no discretion and must report the incident; when confronted with
> circumstances giving rise to a reasonable suspicion of abuse, [the Child Abuse and
> Neglect Reporting Act] does not permit a mandated reporter to investigate and
> determine that no abuse occurred . . . . It is this initial report to the agency that
> triggers an agency's cross-reporting duties under Sections 11166(j), (k) and its
> related investigatory responsibilities.  If the employee is wearing the hat of
> investigator, however, by following up on an already-reported instance of suspected
> or known child abuse, her activities fall outside Section 11166(a).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

(*Id.*) (citations and internal quotation marks omitted).

In this case, it is undisputed that on July 17, 2019, the DCFS hotline received a referral regarding J.L.A. after Mazzarella was cited for driving under the influence. (D. SUF No. 1.) On July 18, 2019, the referral was sent to Fidello, who was the assigned duty social worker that day for the Torrance office, to investigate. (D. SUF No. 6.) Social worker Lee was assigned to assist with the investigation. (D. SUF No. 7.) Fidello and Lee began their investigation by meeting with Plaintiff and J.L.A. on July 18, 2019. (D. SUF No. 9.) Fidello and Lee continued their investigation through, for example, calling Mazzarella on July 19, 2019, speaking to J.L.A.'s babysitter on July 30, 2019, calling the Los Angeles Sheriff's Department on July 30, 2019, calling J.L.A's daycare provider on July 30, 2019, attempting to visit and call Plaintiff on July 30, 2019, meeting with Mazzarella's landlord on August 1, 2019, conducting a visit to Plaintiff's home on August 12, 2019, attempting to visit Mazzarella on August 15, 2019, and meeting with Mazzarella and J.L.A. on August 15, 2019, in the DCFS parking lot. (*See, e.g.*, D. SUF Nos. 19, 23, 24, 26, 28, 34, 35, 39, 52, 57, 58, 64.)

During the August 15, 2019, meeting between Lee, Mazzarella, and J.L.A, Mazzarella was dressed in a work uniform that was stained with food. (D. SUF No. 65.) Although Lee asked whether she smelled alcohol on Mazzarella, Mazzarella told Lee that the smell was from the soy sauce on her chef's coat. (D SUF Nos. 67, 68.) Lee asked Mazzarella about the allegations of her alcoholism and Mazzarella admitted to Lee that she had been to drug rehabilitation and that she was sober for over a year and a half. (D. SUF Nos. 69, 70.) Mazzarella reported to Lee that she drank alcohol occasionally. (D. SUF No. 71.) Mazzarella testified that she lied to Lee about her alcoholism. (D. SUF No. 72.) Lee observed J.L.A. during the visit and noted that she was active and appeared to be happy. (D. SUF No. 77.) Lee conducted a body check of J.L.A. for any signs of physical abuse and/or neglect. (D. SUF No. 78.) During the August 15, 2019, meeting with J.L.A. and Mazzarella, Lee attempted to interview J.L.A., but due to her age, J.L.A. did not provide any meaningful response to her questions. (D. SUF No. 79.) Ultimately, Lee did not form the opinion during the August 15,

---

**CIVIL MINUTES – GENERAL**                                                        **19**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                          Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

2019, meeting that Mazzarella was under the influence of drugs or alcohol or that Mazzarella was being untruthful.  (D. SUF Nos. 81, 82.)

Defendant argues these undisputed facts establish that Lee's August 15, 2019, meeting with J.L.A. and Mazzarella occurred in the context of an ongoing investigation that began after DCFS received a referral on July 17, 2019.  (Reply at 3-5.)  The court agrees and concludes the undisputed facts further establish that Lee did not observe any signs of abuse or neglect during the August 15, 2019, meeting that could have triggered a potential new report.  (*See, e.g.,* D. SUF Nos. 65-82.)  Although Lee observed J.L.A. was wearing a dress with no underwear and had two small dime sized scrapes on her left knee area and bruising on her forehead, Lee still concluded that J.L.A. was not being abused or neglected.  (P. SUF No. 146.)

Based on the undisputed facts, the court finds Defendant has met its initial burden of demonstrating a lack of evidence as to Lee's breach of a mandatory duty on August 15, 2019, such that the burden shifts to Plaintiff to designate "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.

Plaintiff argues "[t]here is no reasonable question that observing a mother drinking and driving with her infant child, constitutes abuse and/or neglect," (Opp. at 14), but does not sufficiently cite to evidence that Lee observed Mazzarella drinking and driving during their August 15, 2019, meeting.  Moreover, it is undisputed that Lee did not believe that Mazzarella was under the influence of drugs or alcohol during the August 15, 2019, meeting or that Mazzarella was being untruthful.  (*See, e.g.,* D. SUF Nos. 81, 82.)  Accordingly, the court finds Plaintiff has not met his shifted burden of setting "forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation omitted).  The court therefore **GRANTS** the Motion as to Plaintiff's first cause of action for negligence based on breach of a mandatory duty by Lee in the August 15, 2019, meeting.

_____

**CIVIL MINUTES – GENERAL**                                                        **20**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

2. <u>Completing a "Structured Decision Making Tool" ("SDM")
Evaluation Is Not a Mandatory Duty and Even If It Were, the
Undisputed Facts Demonstrate Lee and Fidello Completed an SDM</u>

As to whether Lee and Fidello breached a mandatory duty by failing to complete a
"Structured Decision Making Tool" ("SDM") evaluating the safety and risk factors for J.L.A.,
the court concludes that completing an SDM is not a mandatory duty under California law, and
even if it were, the undisputed facts demonstrate that Lee and Fidello completed an SDM.

Plaintiff argues Lee and Fidello were required to complete an SDM for J.L.A. under
DCFS Policy Nos. 70-548.10 and 70-548.24 "by failing to input accurate information."  (Opp.
at 15.)  According to Plaintiff, "[h]ad the assessments been done properly DCFS would have
had to elevate their investigation of Mazzarella into a case and would have offered services and
intervention rather than closing the referral after only speaking to Mazzarella in person *once*."
(*Id.*) (internal quotation marks omitted) (emphasis in original).  Defendant argues completing an
SDM is not a mandatory duty, and instead is required by an internal DCFS policy.  (Reply at 5.)
The court agrees that complying with an internal policy does not constitute a mandatory duty
under the California Government Code.

Under California Government Code Section 815.6, "[w]here a public entity is under a
mandatory duty imposed by an enactment that is designed to protect against the risk of a
particular kind of injury, the public entity is liable for an injury of that kind proximately caused
by its failure to discharge the duty unless the public entity establishes that it exercised
reasonable diligence to discharge the duty."  *Id*.  An "enactment" within the meaning of Section
815.6 is a "constitutional provision, statute, charter provision, ordinance or regulation."  Cal.
Gov. Code § 810.6.  A regulation is defined as a "rule, regulation, order or standard, having the
force of law, adopted by an employee or agency of the United States pursuant to the federal
Administrative Procedure Act . . . or as a regulation by an agency of the state pursuant to the
Administrative Procedure Act."  Cal. Gov. Code § 811.6.

An internal agency document such as an employee manual does not constitute "an
administrative regulation within the meaning of the Act" and such a document "impose[s] no

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

mandatory duties on [a] County or its employees." *Wilson v. Cnty. of San Diego*, 91 Cal. App.
4th 974, 982 (2001); *see also Hucko v. City of San Diego*, 179 Cal. App. 3d 520, 522 n.1 (1986)
("We reject [plaintiff's] contention that a lesson plan prepared by an instructor at the police
academy can in any sense constitute an administrative regulation within the meaning of
Government Code section 811.6. . . thereby creating a mandatory duty to act.").

Plaintiff does not sufficiently demonstrate that an internal policy establishes a mandatory
duty within the meaning of California Government Code Section 815.6.  (*See generally* Opp.)
Per Section 815.6, a mandatory duty must be imposed by an "enactment," which is in turn
defined by Section 810.6 as a "constitutional provision, statute, charter provision, ordinance or
regulation."  The court concludes Defendant has met its initial burden of demonstrating that
completing an SDM is not a mandatory duty, such that the burden shifts to Plaintiff to designate
"specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Plaintiff
does not sufficiently cite to evidence that an SDM is a mandatory duty or that even if it were a
mandatory duty, that the social workers failed to complete an SDM.  (*See generally* Opp.)
Accordingly, the court finds Plaintiff has not met his shifted burden of setting "forth specific
facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation
omitted).  The court therefore **GRANTS** the Motion as to Plaintiff's first cause of action for
negligence based on breach of a mandatory duty based on completing an SDM.

### 3.  Supervising Mazzarella Was Not a Mandatory Duty

Third, as to whether Defendant had a mandatory duty to supervise Mazzarella, the court
concludes supervising an adult parent is not a mandatory duty under California law.

Plaintiff argues "[o]nce Lee noticed that Mazzarella arrived potentially intoxicated to the
August 15 meeting, she had a mandatory duty to supervise Mazzarella under the circumstances
of Mazzarella's present substance use and abuse." (Opp. at 16.)  But Plaintiff does not
sufficiently cite to authority that social workers have a general duty to supervise an adult parent.
(*See generally* Opp.)  Moreover, the undisputed facts establish that Lee believed that the smell
coming from Mazzarella was from soy sauce on her chef's coat, and Lee did not form the

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                           Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

opinion during the August 15, 2019, meeting that Mazzarella was under the influence of drugs
or alcohol or that Mazzarella was being untruthful.  (*See, e.g.,* D. SUF Nos. 67, 68, 81, 82.)

As stated above, under California Government Code Section 815.6, "[w]here a public
entity is under a mandatory duty imposed by an enactment that is designed to protect against the
risk of a particular kind of injury, the public entity is liable for an injury of that kind
proximately caused by its failure to discharge the duty unless the public entity establishes that it
exercised reasonable diligence to discharge the duty." *Id*.  An "enactment" within the meaning
of Section 815.6 is a "constitutional provision, statute, charter provision, ordinance or
regulation."  Cal. Gov. Code § 810.6.  A regulation is defined as a "rule, regulation, order or
standard, having the force of law, adopted by an employee or agency of the United States
pursuant to the federal Administrative Procedure Act . . . or as a regulation by an agency of the
state pursuant to the Administrative Procedure Act."  Cal. Gov. Code § 811.6.

The court concludes Defendant has met its initial burden of demonstrating that
supervising an adult parent is not a mandatory duty, such that the burden shifts to Plaintiff to
designate "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.
Plaintiff does not sufficiently cite to evidence supporting the argument that supervising the
adult parents being investigated by DCFS is a mandatory duty.  (*See generally* Opp.)
Accordingly, the court finds Plaintiff has not met his shifted burden of setting "forth specific
facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (citation
omitted).  The court therefore **GRANTS** the Motion as to Plaintiff's first cause of action for
negligence based on breach of a mandatory duty related to supervising Mazzarella.

### ii.   Negligent Hiring and Supervision

Plaintiff also seeks to impose liability on Defendant under a theory that Defendant
negligently hired and supervised its social workers.  (Opp. at 17-18.)  Plaintiff cites *C.A. v.
William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861 (2012), for the proposition that a claim
against a public entity for negligent hiring and supervision is cognizable under California
Government Code Section 815.2.  (*Id.*)  In *Hart*, the California Supreme Court held that "a
public school district may be vicariously liable under section 815.2 for the negligence of

---

**CIVIL MINUTES – GENERAL**                                                    **23**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

administrators or supervisors in hiring, supervising and retaining a school employee who
sexually harasses and abuses a student" but that "a district's liability must be based on evidence
of negligent hiring, supervision or retention, not on assumptions or speculation." 53 Cal. 4th at
878-89.

Plaintiff does not sufficiently cite to facts or other law supporting this argument, and
merely contends that "[a] jury must hear Plaintiff's claims based on negligent hiring or
supervision against the County, after Plaintiff is allowed discovery to develop these claims."
(Opp. at 17.) Defendant contends *Hart* is inapposite and even if such a claim were cognizable,
Plaintiff has offered no evidence supporting a negligent hiring and supervision claim. (Reply at
7.) The court agrees. The undisputed facts in this case establish that DCFS social workers
undergo a multi-month training on various topics when they are hired, undergo field training for
an additional three months, take twenty hours of continuing education training every year, and
that at the time they were involved in J.L.A.'s investigation, Lee, Fidello, and Nguyen had
satisfied all their training requirements. (*See, e.g.*, D. SUF Nos. 101-05.) Plaintiff does not
sufficiently explain why Defendant negligently hired or supervised social workers apart from
arguing again that Lee breached a mandatory duty during her August 15, 2019, meeting with
Mazzarella. (Opp. at 17-18.)

The court concludes Defendant has met its initial burden of demonstrating that an
absence of evidence supporting a negligent hiring and supervision theory, such that the burden
shifts to Plaintiff to designate "specific facts showing there is a genuine issue for trial."
*Celotex*, 477 U.S. at 324. Plaintiff does not sufficiently cite to evidence supporting the
argument that Defendant negligently hired or supervised social workers. (*See generally* Opp.)
Accordingly, the court finds Plaintiff has not met his shifted burden of setting "forth specific
facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation
omitted). The court therefore **GRANTS** the Motion as to Plaintiff's first cause of action for
negligence based on negligent hiring or supervision.
///
///

_____

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

### iii.  Immunity

Defendant further argues that even if Plaintiff prevailed on his negligence claim, Defendant and its social workers would be immune from liability under, at a minimum, California Government Code Section 820.2.  (Mot. at 16-19.)

Under Government Code Section 820.2, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  *Id.*  A breach of a mandatory duty, such as one laid out in a statute or regulation, is not considered a discretionary decision.  *See Scott v. Cnty. of Los Angeles*, 27 Cal. App. 4th 125, 141 (1994) ("Actions that are manifestly ministerial, because they amount only to obedience to orders which leave the officer no choice, plainly include actions governed by specific statutory or regulatory directives.  Such actions have been found nondiscretionary, and thus not immunized, because they entail the fulfillment of enacted requirements.").

In contrast, activities such as conducting an investigation and determining the potential risk to a child are ones that "involve a formidable amount of discretion."  *Ortega v. Sacramento Cnty. Dep't of Health & Hum. Servs.*, 161 Cal. App. 4th 713, 728 (2008).  If a defendant complies with a duty imposed by a statute or regulation, whether an investigation is "lousy," or a determination is the "wrong one" has no bearing on immunity.  *Id.*  Indeed, "that is what section 820.2 immunity does—it immunizes discretionary decisions 'whether or not such discretion be abused.'"  *Id.* (quoting Cal. Gov. Code § 820.2); *see also Ronald S. v. Cnty. of San Diego*, 16 Cal. App. 4th 887, 897 (1993) ("The nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity. The decisions made in the adoption process are by nature highly subjective.").

In this case, the undisputed facts do not demonstrate the breach of a mandatory duty, as discussed above.  (*See supra* Section IV(b)(i).)  Instead, the undisputed facts demonstrate that the social workers conducted an investigation of the July 17, 2019, referral, and based on the

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

information gathered from their investigation, formed the opinion that J.L.A. was not at any risk of imminent harm that would justify removing her from Mazzarella. (*See, e.g.,* D. SUF No. 91.) The social workers further concluded that Mazzarella did not have any active drug or alcohol issues that presented a risk of harm to J.L.A. or that J.L.A. needed to be removed from Plaintiff's or Mazzarella's custody. (*See, e.g.,* D. SUF Nos. 92, 93.) Based on these conclusions, the social workers closed their investigation of J.L.A. on August 19, 2019. (*See, e.g.,* D. SUF No. 94.)

Plaintiff does not sufficiently address Defendant's argument regarding immunity and instead maintains the social workers breached a mandatory duty. (*See generally* Opp.) But as discussed above, Defendant has met its burden of demonstrating a lack of evidence as to breach of a mandatory duty and Plaintiff has failed to meet his shifted burden of identifying a genuine issue for trial. Based on the undisputed facts regarding the investigation, the court concludes the social workers' investigatory decisions were discretionary actions that are immune from liability under Government Code Section 820.2. *See Ortega*, 161 Cal. App. 4th at 728; *Ronald S.*, 16 Cal. App. 4th at 897. Accordingly, the court concludes that given the absence of a breach of a mandatory duty, immunity under Government Code Section 820.2 defeats Plaintiff's negligence claim against Defendant and serves as an additional basis for **GRANTING** the Motion as to Plaintiff's first cause of action for negligence.

### c. Claim Two (*Monell* Claim)

Plaintiff's second claim is a *Monell* claim under 42 U.S.C. § 1983. (*See generally* SAC.) Plaintiff does not sufficiently identify a civil rights violation that serves as the basis of the *Monell* claim but argues Defendant is liable "for increasing the risk of danger [J.L.A.] faced." (Opp. at 18-19.)

A government entity may be liable under 42 U.S.C. § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)). A government entity may be held liable "only for 'their *own* illegal acts,'" not the actions of their employees. *See id.* (quoting *Pembaur*

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-08305-FWS-JDE                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

---

*v. Cincinnati*, 475 U.S. 469, 479 (1986)); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)
("*Respondeat superior* or vicarious liability will not attach under § 1983.").  The Ninth Circuit
has explained that a plaintiff may establish a government entity's liability under section 1983
pursuant to three distinct theories:

> First, a local government may be liable if "execution of a government's policy or
> custom, whether made by its lawmakers or by those whose edicts or acts may fairly
> be said to represent official policy, inflict[ed] the injury."  Second, a local
> government can fail to train employees in a manner that amounts to "deliberate
> indifference" to a constitutional right, such that "the need for more or different
> training is so obvious, and the inadequacy so likely to result in the violation of
> constitutional rights, that the policymakers of the city can reasonably be said to have
> been deliberately indifferent to the need."  Third, a local government may be held
> liable if "the individual who committed the constitutional tort was an official with
> final policy-making authority or such an official ratified a subordinate's
> unconstitutional decision or action and the basis for it."

*Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (citations omitted).

The court observes the SAC does not allege a separate constitutional violation.  (*See
generally* SAC.)  Accordingly, Plaintiff's *Monell* claim is based solely on Plaintiff's negligence
claim.  (*Id.*)  The court observes that there can be no *Monell* claim without an underlying
constitutional violation.  *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the
liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a
violation of constitutional rights."); *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir.
2020) ("*Monell* claims [] require a plaintiff to show an underlying constitutional violation.");
*Fink-Carver v. Kuhn*, 2022 WL 9496635, at *3 (N.D. Cal. Oct. 14, 2022) ("[T]here can be no
*Monell* claim without a constitutional violation.").

Although Plaintiff cites to several cases regarding a state actor's liability for increasing
the risk of danger to a plaintiff (*see* Opp. at 18-19), the court observes the cited cases concerned

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-08305-FWS-JDE                                    Date: August 29, 2023
Title: Gary Agosto v. County of Los Angeles *et al.*

---

alleged Due Process violations.  (*See id.* (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (discussing a state's duty to protect individuals from harm under the Fourteenth Amendment's Due Process Clause); *Munger v. City of Glasgow Police Dep't.*, 227 F.3d 1082, 1086 (9th Cir. 2000) (same); *Tamas v. Dep't. of Social & Health Services*, 630 F.3d 833, 845 (9th Cir. 2010) (same).)  In this case, as noted above, Plaintiff does not allege or sufficiently identify a constitutional violation and instead relies on a theory of negligence.  (*See generally* SAC.)  Accordingly, because there is no underlying constitutional violation that could support Plaintiff's *Monell* claim, the court **GRANTS** the Motion as to Plaintiff's second cause of action for an unconstitutional policy, practice or custom under *Monell*.

### V.    Disposition

For the reasons stated above, the court **GRANTS** the Motion.  Summary judgment is granted in favor of Defendants on Plaintiff's claims for negligence and *Monell* liability.  The court **ORDERS** Defendants to lodge a proposed judgment consistent with this Order within **ten (10)** days of the date of this Order.  Plaintiff shall then file any objections to the proposed judgment within **ten (10)** days of Defendants filing the proposed judgment.

**IT IS SO ORDERED.**

Initials of Deputy Clerk:  mku

---